IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 03-cv-01573-MSK-CBS

ANTHONY DEAN CONLEY,

    Plaintiff,

v.

THOMAS LEE QUINTANA,
MIKE MARONI, and
LARRY RITTENMEYER,

    Defendants.

---

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY ADJUDICATION (#98) FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, AND DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE**

---

THIS MATTER comes before the Court on the Defendants' Motion for Summary Adjudication **(#98)**. Having considered the motion, the response **(#102)**, the reply **(#104)**, and the documentary evidence submitted therewith, the Court finds and concludes as follows.

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II. Issue Presented

Previously, this Court liberally construed Mr. Conley's *pro se*[1] Complaint as asserting two claims: (1) Officers[2] Quintana and Rittenmeyer violated Mr. Conley's Eighth Amendment rights

---

[1] He is now represented by counsel.

[2] To the extent possible, the Court refers to each Officer by name. Otherwise, the Court refers to the Defendants collectively as either "the Defendants" or "the Officers."

because they threatened to kill him "and make it look like a suicide" if he did not kill another inmate named Red Kettle, and because he was assaulted by masked guards at their direction after he failed to comply; and (2) Officer Maroni was part of a conspiracy to commit such Eighth Amendment violation. The Court must determine whether Mr. Conley exhausted administrative remedies with respect to these claims.

### III.  Material Facts

Based upon the evidence submitted, which the Court construes most favorably to Mr. Conley, the Court finds for purposes of this motion that Mr. Conley has presented evidence of the following:

1. At all times pertinent to this action, Mr. Conley was incarcerated at the United States Penitentiary in Florence, Colorado.

2. Mr. Conley submitted a Request for Administrative Remedy which the warden received on April 3, 2003 ("the April 3 Request").

3. In the April 3 Request, Mr. Conley complained that after he was placed in the Special Housing Unit, C.O. John Whitehouse confiscated his legal materials and gave his personal property away to other inmates. He also asserted that C.O. Holdon inventoried his property. He asked that C.O. Whitehouse be sanctioned and asked that "these officers stop harassing me."

4. The warden declined to award Mr. Conley any relief on his April 3 Request.

5. Mr. Conley filed a Regional Administrative Remedy Appeal from the response to his April 3 Request. In such appeal, he claimed that he was being beaten by unidentified staff. He also claimed that Officer Quintana and other officers were colluding to have him placed in the Special Housing Unit. Officer Rittenmeyer is also mentioned in this appeal, although there are no

allegations of him engaging in any particular conduct.

6. The Regional Director affirmed the warden's decision and declined to address the issue of the alleged beatings because it had not been raised in the initial request for administrative review. He encouraged Mr. Conley to bring such issue to the attention of the warden "for appropriate investigation."

7. Mr. Conley filed a Central Office Administrative Remedy Appeal. In such appeal, he claimed that he had been attacked by staff under the direction of Officers Maroni and Rittenmeyer. He also contended that Officer Quintana had called him a racial slur.

8. According to Mr. Conley's response to the Motion for Summary Judgment, the beatings referenced in the April 3 Request were in retaliation for his filing of liens against the real property of prison officers. He does not contend that he was beaten because he refused to kill any other inmate.

9. The National Inmate Appeals Administrator responded to such appeal, stating that the allegations of staff misconduct were "referred to the appropriate office for further review."

10. Mr. Conley submitted two Requests for Administrative Remedies which the warden received on April 7, 2003 ("the April 7 Requests").

11. In the first April 7 Request, Mr. Conley claimed that C.O. Whitehouse retaliated against him for filing commercial paperwork on other staff, gave his property to other inmates, and turned his paperwork over to S.I.S. Harrison. The outcome of this grievance is not in the documentary record.

12. Mr. Conley filed a Regional Administrative Remedy Appeal as to his first April 7 Request, but did not file a Central Office Administrative Remedy Appeal.

13. In the second April 7 Request, Mr. Conley claimed that Officer Quintana discriminated against him because of his race by giving his cell to another inmate while he was in the Special Housing Unit. This April 7 Request was denied.

14. Mr. Conley filed a Regional Administrative Remedy Appeal and a Central Office Administrative Remedy Appeal as to his second April 7 Request, again complaining about his cell assignment. Such appeals were denied.

15. Mr. Conley submitted a Request for Administrative Remedy on June 2, 2003 ("the June 2 Request"). He complained that Officer Rittenmeyer offered to let him back into the general population if he would hurt or possibly kill other inmates. He also complained that Officer Quintana suggested that he would be the best person to carry out such assaults. He requested that he be placed on single cell status.

16. The June 2 Request was submitted directly to the Regional Director as a sensitive request. The Regional Director referred this grievance "to the appropriate department[.]" Although he was not placed in a single cell, Mr. Conley did not file a Central Office Administrative Remedy Appeal because he considered the Regional Director's response as otherwise granting his June 2 Request.

## IV. Standard of Review

Determination of claims or defenses on their merits without a trial is governed by Rule 56 of the Federal Rules of Civil Procedure, which facilitates the entry of a judgment if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 authorizes summary adjudication when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law

determines the material facts and issues. It specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence for a reasonable jury to find in favor of the non-movant on the claim or defense that the non-movant is obligated to prove. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**V. Analysis**

The Officers argue that Mr. Conley's claims should be dismissed, with prejudice, because he did not exhaust administrative remedies as to any claims asserted in this lawsuit. Mr. Conley contends that he exhausted administrative remedies through submission of the April 3 Request, the two April 7 Requests, and the June 2 Request to the Bureau of Prisons.

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion of administrative remedies under this statute is a mandatory prerequisite to suit, and accordingly, it must occur before the suit is initiated. *See Porter v. Nussle,* 534 U.S. 516, 524 (2002).

The PLRA's exhaustion requirement is considered a "total exhaustion rule." *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1182 (10th Cir. 2004). This means that if a single claim is unexhausted, the Court must dismiss all claims, including any exhausted claims, without prejudice. *See id.* at 1189.

The Bureau of Prisons has a four-tiered administrative remedy program with which an inmate must comply to obtain judicial review. The first tier generally requires an inmate to seek informal resolution of his grievance. *See* 28 C.F.R. § 542.13. He then may submit a request for review to the warden. *See* 28 C.F.R. § 542.14. If dissatisfied with the warden's response, he may appeal to the Regional Director. *See* 28 C.F.R. § 542.15(a). He may appeal the Regional Director's determination to the Central Office, which provides the final administrative review. *See id.* An inmate may bypass informal resolution or review from the warden as to sensitive issues, which the inmate may submit directly to the Regional Director. *See* 28 C.F.R.

§ 542.14(d)(1).

Before turning to the specific grievances, the Court addresses the law governing the Eighth Amendment claim. The Eighth Amendment prohibits the infliction of cruel and unusual punishment. However, not all unpleasant prison conditions give rise to an Eighth Amendment violation. *See Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir.), *cert. denied*, 543 U.S. 837 (2004). For example, an officer's verbal harassment of, or threats to, an inmate do not violate the Eighth Amendment. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff threatened to hang the inmate); *see also McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (officer threatened to use mace). For there to be an Eighth Amendment violation, there must be a serious deprivation of a basic necessity such as food, shelter, sanitation, health care, adequate clothing and personal safety. *See Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992).

Although mere threats are not actionable under the Eighth Amendment, an officer's violent acts against an inmate can give rise to an Eighth Amendment excessive force claim. *See DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001). The inquiry with respect to such claim is whether there was an unnecessary and wanton infliction of pain. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986).[3]

When the Court liberally construed Mr. Conley's Complaint as giving rise to an Eighth Amendment claim, it considered the allegations that: (1) Officers Quintana and Rittenmeyer

---

[3] In its prior Order denying the motion to dismiss, the Court characterized the Eighth Amendment issue as one of deliberate indifference to Mr. Conley's safety. However, because Mr. Conley alleged that officers were deliberately violent to him, it arguably would have been more appropriate to characterize the claim as an excessive force claim.

threatened to kill him if he did not kill Red Kettle; and (2) Mr. Conley was subsequently beaten by unidentified guards. Pursuant to *Collins* and *McBride*, the first of these allegations would not have been sufficient to allege an Eighth Amendment violation by itself. Similarly, the second of these allegations would not have been enough to assert an excessive force claim against any of the named Defendants because no conduct was linked to them. However, as part of its liberal construction of the Complaint, the Court considered these allegations together as sufficiently pleading a consummated threat of violence. Absent such linkage, there would be no Eighth Amendment violation.

Such linkage is lacking in Mr. Conley's grievances. In none of his grievances did Mr. Conley complain that Officers Quintana, Maroni or Rittenmeyer threatened to kill him if he did not kill Red Kettle. The only grievance bearing any resemblance to such claim is the June 2 Request, in which Mr. Conley claimed that Officer Rittenmeyer offered him a more favorable housing assignment if he would harm or possibly kill other inmates. He also claimed that Officer Quintana suggested that he would be the best person to carry out such assaults. However, there is no allegation that Officers Quintana, Maroni or Rittenmeyer threatened to harm Mr. Conley if he did not kill other inmates, or carried out such threat.

In his April 3 Request, Mr. Conley contended that he was assaulted by prison guards under the direction of Officers Maroni and Rittenmeyer. He clarifies in his response to the Motion for Summary Adjudication that these assaults were in retaliation for his filing of liens against the real property of prison officers. Although he raised such contentions at the Central Office level only, the Central Office chose to respond to them and referred the matter to an "appropriate office for further review." It did not deny such grievance on procedural grounds.

8

Therefore, the Court considers such contentions exhausted.

However, the excessive force claim that has been exhausted is completely different from the claims asserted in the Complaint, which have not been exhausted. Pursuant to the total exhaustion rule of *Ross*, 365 F.3d at 1189, the Court reluctantly must dismiss all of Mr. Conley's claims given the presence of at two unexhausted claims.

The Officers request that the dismissal be with prejudice because they believe that such claims would be time-barred if asserted in a new action. However, a dismissal for failure to exhaust administrative remedies is to be without prejudice. *See Ross*, 365 F.3d at 1189. In addition, it is not this Court's role to determine whether claims to be asserted in a future lawsuit are time-barred. Therefore, the Court dismisses Mr. Conley's claims without prejudice.

**IT IS THEREFORE ORDERED** that the Officers' Motion for Summary Adjudication **(#98)** is **GRANTED**. Mr. Conley's claims are **DISMISSED**, without prejudice, for failure to exhaust administrative remedies. The Clerk of Court is directed to close this case.

Dated this 17th day of February, 2006

                            **BY THE COURT:**

                            *[signature: Marcia S. Krieger]*

                            Marcia S. Krieger
                            United States District Judge